**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| AltaThera Pharmaceuticals LLC, | |
| *Plaintiff,* | Civil Action No. 1:22-cv-04620 |
| vs. | |
| Hyloris Pharmaceuticals SA, Academic Pharmaceuticals Inc., John C. Somberg, M.D., | **DEMAND FOR JURY TRIAL** |
| *Defendants.* | |

## DEFENDANT HYLORIS PHARMACEUTICALS SA'S MOTION TO DISMISS FOR INSUFFICIENT PROCESS, IMPROPER VENUE, AND FAILURE TO STATE A CLAIM

Defendant Hyloris Pharmaceuticals SA ("Hyloris"), by its undersigned counsel, moves:
(1) pursuant to Federal Rule of Civil Procedure 12(b)(5), to dismiss the complaint against
Hyloris for insufficient service of process, (2) pursuant to Federal Rule of Civil Procedure
12(b)(3) and the Federal Arbitration Act, 9 U.S.C. § 1 *et seq*. (the "FAA"), to dismiss Counts 1,
2, 4-6, and 9-11 against Hyloris for improper venue; and (3) pursuant to Federal Rule of Civil
Procedure 12(b)(6), to dismiss Count 11 against Hyloris for failure to state a claim upon which
relief can be granted.

In support of this motion, Hyloris submits the Affidavit of Stijn Van Rompay ("the Van
Rompay Affidavit"), attached hereto as Exhibit 1, the December 2014 Licensing, Development
and Supply Agreement ("LDSA") (attached hereto as Exhibit 1-A), and the Notice Letter
provided by AltaThera on August 30, 2022 (attached hereto as Exhibit 1-B).

## <u>BRIEF IN SUPPORT OF HYLORIS'S MOTION TO DISMISS</u>

The complaint against Hyloris should be dismissed because Plaintiff AltaThera

Pharmaceuticals LLC ("AltaThera") failed to properly serve Hyloris, a Belgian corporation.  In

addition, Counts 1, 2, 4-6, and 9-11 against Hyloris should be dismissed because AltaThera is

contractually obligated to pursue those Counts through arbitration, rather than this Court.[1]  Count

11 against Hyloris should also be dismissed because it fails to state a claim upon which relief can

be granted.

AltaThera presents this contract dispute in the form of a trade secret case.  AltaThera's

story, as set forth in its Complaint, is a simple question made exceedingly complicated by its

overlong pleading – namely whether Hyloris breached the LDSA which includes confidentiality

provisions and an arbitration clause.  AltaThera provided Hyloris a Notice █████████

regarding the LDSA relying completely on the unsealed complaint in this action, demonstrating

that the subject matter of this dispute is properly subject to arbitration under the LDSA.  Because

arbitration is mandatory and because the issues subject to arbitration are identical to the issues

raised throughout AltaThera's Complaint, this action should be dismissed.  In addition,

AltaThera's last count for a declaration of ownership is nothing but a thinly disguised claim for

correction of inventorship, and no such claim exists over the inchoate rights of a pending patent

application.  Count 11 should be dismissed as a matter of law.

## I.    <u>BACKGROUND FACTS</u>

The following background facts inform why Counts 1, 2, 4-6, and 9-11 against Hyloris

should be dismissed.

---

[1]  Counts 3, 7, and 8 are exclusively asserted against co-Defendants Academic Pharmaceuticals Inc. ("Academic") and John C. Somberg, M.D. ("Somberg") and are not part of this motion.

A.    **Hyloris**

Hyloris is a specialty biopharma company focused on innovating, reinventing, and optimizing existing medications to address important healthcare needs and deliver relevant improvements for patients, healthcare professionals, and payors.  *See Ex. 1, ¶ 2.*  Hyloris works to address the unmet needs of underserved patient populations and has built a pipeline of complex, value-added products that offer significant advantages over currently available alternatives.  *Id.*

B.    **Service on Hyloris**

AltaThera served the complaint in this action on Hyloris by causing the clerk of the court to send the summons and complaint by FedEx to Hyloris's offices in Belgium.  *ECF 17, ¶ 3.*

C.    **Agreement Between AltaThera and Hyloris**

As noted in the Complaint, AltaThera and Hyloris executed the LDSA on December 1, 2014 (*see Ex. 1, ¶ 3; see Ex. 1-A; see also ECF 1, ¶ 42*).  *See ECF 1, ¶¶ 42-47, 90-91.*  The Complaint alleges that the LDSA "imposed stringent obligations regarding use or disclosure of confidential information," *inter alia*, AltaThera's confidential information.  *See ECF 1, ¶¶ 43.*  The Complaint further alleges that Hyloris's "improper use and disclosure of AltaThera's confidential and proprietary information, including valuable trade secrets, allowed [Hyloris] to enrich [itself] at AltaThera's expense."  *ECF 1, ¶ 137.*

D.    **The LDSA and Notice to Hyloris**

The LDSA states "████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████  *Ex. 1-A, p. 2.*  The LDSA

states ████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████. *Ex. 1-A, § 8.1(a)*. The LDSA states that "████████████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████" *Ex. 1-A, § 11.1(d)*. The LDSA states that it "sets forth the entire agreement and understanding between the Parties as to the subject matter hereof, and fully supersedes all prior agreements and understandings, if any, between the Parties pertaining to such matters." *Ex. 1-A, § 16.1*. The LDSA further states that it "shall be governed by, and construed in accordance with, the laws of the State of New York." *Ex. 1-A, § 16.5*. The LDSA further states:

> All disputes arising out of or in connection with this Agreement shall be finally settled under the Commercial Rules of the American Arbitration Association by one or more arbitrators appointed in accordance with its rules. The arbitration shall be held in New York, New York. Any arbitration award may be enforced in any court of competent jurisdiction.

*Ex. 1-A, § 16.12*. The LDSA was signed on behalf of AltaThera by Brandon L. Kashfian (AltaThera's then Chief Executive Officer and President) and on behalf of Hyloris by Stijn Van Rompay (Hyloris's Chief Executive Officer). *See Ex. 1-A, p. 49; see also Ex. 1, ¶ 3*.

On August 30, 2022, AltaThera provided Hyloris with a Notice under the LDSA. *Ex. 1-B; see also Ex. 1, ¶ 4*. Pursuant to the Notice, ████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████ *Id*.

**E.    U.S. Patent Application Serial No. 16/449,796 ("the '796 Application")**

The '796 Application, titled "A Method of Initiating or Escalating Dofetilide Dose and Formulations Therefor," was filed on June 24, 2019, and claimed priority to U.S. Provisional

Patent Application Serial No. 62/689,442, which was filed on June 25, 2018. The listed inventor for the ʼ796 Application is John Somberg. The listed applicant for the ʼ796 Application is Academic Pharmaceuticals, Inc. The ʼ796 Application published on December 26, 2019, as U.S. Patent Publication No. US2019/0388371. The ʼ796 Application issued as U.S. Patent No. 11,364,213 ("the ʼ213 Patent") on June 21, 2022, with twenty claims.

Prior to issuance of the ʼ213 Patent, a divisional patent application was filed, *i.e.*, U.S. Patent Application Serial No. 17/380,413 ("the ʼ413 Application"), which was filed on July 20, 2021. The listed inventor for the ʼ413 Application is John Somberg. The listed applicant for the ʼ413 Application is Academic Pharmaceuticals, Inc. The ʼ413 Application published on November 11, 2021, as U.S. Patent Publication No. US2021/0346325. Examination of the ʼ413 Application has not occurred and the ʼ413 Application has not issued as a patent.

## II. ARGUMENT

Because Hyloris was not served properly, the complaint against Hyloris should be dismissed. In addition, because AltaThera has a valid and enforceable agreement with Hyloris that contains a mandatory arbitration clause and because "declaration of ownership" is not a claim upon which relief can be granted, Counts 1, 2, 4-6, and 9-11 against Hyloris should be dismissed.

### A. AltaThera's Complaint Against Hyloris Should be Dismissed for Insufficient Service of Process

Plaintiff's complaint against Hyloris, a Belgian corporation, should be dismissed for insufficient service of process. FED. R. CIV. P. 12(b)(5) provides for dismissal of a case if there is "insufficient service of process." *See also Strabala v. Zhang*, 318 F.R.D. 81, 114 (N.D. Ill. 2016). Serving a corporation in a foreign country is governed by Rule 4(h)(2), which allows for any method of service prescribed by Rule 4(f) except personal delivery. *See FED. R. CIV. P.*

*4(h)(2); see also Playboy Enters. Int'l, Inc. v. Smartitan (Singapore) Pte. Ltd.*, 804 F. Supp. 2d 730, 738 (N.D. Ill. 2011).

AltaThera purports to have served Hyloris by directing the Clerk to send the Complaint to Hyloris by FedEx. *ECF 17.* But the many subparts of Rule 4(f) do not contain a provision for service by FedEx. Hyloris assumes AltaThera is relying on Rule 4(f)(2)(C)(ii), which, *inter alia*,[2] requires "using *any form of mail* that the clerk addresses and sends to the individual and that requires a signed receipt." *FED. R. CIV. P. 4(f)(2)(C)(ii)* (emphasis added).

Another Court in this District previously confronted the issue of whether international service by FedEx is sufficient under Rule 4(f)(2)(C)(ii) and flatly rejected the idea. Critically, that Court ruled that FedEx "is neither a 'postal channel' (the term used in the Hague Convention) nor 'mail' (the term used in the Federal Rules), at least as that term is commonly understood." *Nsm Music, Inc. v. Alvarez*, 2003 WL 685338, at *2 (N.D. Ill. Feb. 25, 2003). And Judge Kennelly noted that while "[t]hese points might seem technical, [] the plaintiffs are asking this Court to extend its reach abroad, and thus careful adherence to the requirements of international treaties and the Federal Rules of Civil Procedure is called for." *Id.* For that reason, Hyloris respectfully requests that the rules of international service be adhered to and the Complaint dismissed for failure to properly serve process.

**B.** **AltaThera Seeks to Enforce an Agreement with Arbitration Provisions, and Its Claims Against Hyloris Should Be Dismissed**

Each of Counts 1, 2, 4-6, and 9-11 against Hyloris relies upon the LDSA. *See ECF 1, ¶¶ 141, 161, 192, 200, 209, 228, 234, 241.* The LDSA has an arbitration provision. *Ex. 1-A, § 16.12.*

---

[2] Hyloris does not concede that the remaining elements of Rule 4(f)(2)(C)(ii) are met. It is AltaThera's burden to prove sufficient service of process. *See Strabala*, 318 F.R.D. at 114.

The FAA governs enforcement of arbitration agreements.  *See Smith v. Greatbanc Trust Company*, 2020 WL 4926560, at *2 (N.D. Ill. 2020) (citing *Int'l Ins. Co. v. Caja Nacional de Ahorro y Seguro*, 293 F.3d 392, 395 (7th Cir. 2022)).  The FAA "strongly favors arbitration when the parties have agreed to it." *Faulkenberg v. CB Tax Franchise Systems, LP*, 637 F.3d 801, 804 (7th Cir. 2011); *see also Morgan v. Sundance, Inc.*, 142 S. Ct. 1708, 1712 (2022) (noting that "a court must hold a party to its arbitration contract just as the court would to any other kind.").  "A party seeking to compel arbitration must demonstrate: (1) an enforceable written agreement to arbitrate; (2) a dispute within the scope of the arbitration agreement; and (3) a refusal to arbitrate." *Univ. Dermatology & Vein Clinic, LLC v. Cerner Healthcare Sols., Inc.*, 2022 WL 3700831, at *3 (N.D. Ill. Aug. 26, 2022) (citing *A.D. v. Credit One Bank, N.A.*, 885 F.3d 1054, 1060 (7th Cir. 2018)).

"A motion to dismiss under Rule 12(b)(3) for improper venue is the appropriate procedure when a litigant seeks to dismiss a lawsuit based on an arbitration agreement." *Parker v. VIA USA, Inc.*, 2020 WL 4430568, at *1 (N.D. Ill. 2020) (citing *Faulkenberg*, 637 F.3d at 808); *see also Brown v. Hyatt Place*, 2021 WL 1546423, at *1 (N.D. Ill. Apr. 20, 2021).  When deciding whether to dismiss, the district court is not obligated to limit its consideration to the pleadings and instead may consider additional materials, including the parties' arbitration agreement. *See, e.g., Faulkenberg*, 637 F.3d at 809 (citing *Cont'l Cas. Co. v. Am. Nat'l Ins. Co.*, 417 F.3d 727, 733 (7th Cir. 2005)).  While the Court has authority to (1) dismiss Counts 1, 2, 4-6, and 9-11 against Hyloris, or (2) stay the litigation pending the conclusion of arbitration proceedings, "the Seventh Circuit has indicated a preference for dismissal." *Hudgins v. Total Quality Logistics, LLC*, 2017 WL 514191, at *3 (N.D. Ill. Feb. 8, 2017)*; see also GHH, Inc. v. Apex Operating Inc.*, 434 F. Supp. 3d 645, 647 (N.D. Ill. 2020).

Section 4 of the FAA states:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement.

*9 U.S.C. § 4*. "[U]nder § 4 of the FAA, a district court cannot compel arbitration outside the confines of its district." *Faulkenberg*, 637 F.3d at 808 (citing *Haber v. Biomet, Inc.*, 578 F.3d 553, 558 (7th Cir. 2009)). A "Rule 12(b)(3) motion to dismiss for improper venue, rather than a motion to stay or to compel arbitration, is the proper procedure to use when the arbitration clause requires arbitration outside the confines of the district court's district." *Faulkenberg*, 637 F.3d at 808 (citing *Cont'l Ins. Co. v. M/V/Orsula*, 354 F.3d 603, 606-7 (7th Cir. 2003)).

Here, dismissal of Counts 1, 2, 4-6, and 9-11 against Hyloris is proper at least because AltaThera and Hyloris entered into a valid and binding arbitration agreement that covers and are necessarily intertwined with the subject matter of Counts 1, 2, 4-6, and 9-11 and requires arbitration for the reasons stated below in New York.

1.    The LDSA is a Contract Under New York Law

Written arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *9 U.S.C. § 2*. "Whether the parties have validly agreed to arbitrate is governed by state-law principles of contract formation." *Faulkenberg*, 637 F.3d at 809 (citing *Cont'l Cas. Co.*, 417 F.3d at 730). "As for which state's law applies to this question, we would normally respect the law chosen in the . . . agreement." *Faulkenberg*, 637 F.3d at 809 (citing *Hofeld v. Nationwide Life Ins. Co.*, 322 N.E. 2d 454, 458 (1975)). Courts are to resolve any doubts in favor of arbitration, and

courts are to compel arbitration pursuant to the FAA when there is a valid, written arbitration agreement between the parties. *See 9 U.S.C. §§ 2, 3.*

The LDSA states that New York law governs. *See Ex. 1-A, § 16.5.* "To form a binding contract there must be a 'meeting of the minds' such that there is 'a manifestation of mutual assent sufficiently definite to assure that the parties are truly in agreement with respect to all material terms.'" *Stonehill Capital Mgmt. LLC v. Bank of the West*, 28 N.Y.3d 439, 448 (2016) (citations omitted). "In determining whether the parties intended to enter a contract, and the nature of the contract's material terms, we look to the 'objective manifestations of the intent of the parties as gathered by their expressed words and deeds.'" *Id.* at 448-49 (citations omitted).

AltaThera's signature on the LDSA constitutes both an offer and acceptance of arbitration. *People v. Inserra*, 4 N.Y.2d 30, 33 (2004) (citing *Meisbov, Glinert & Levy, Inc. v. Cohen Bros. Mfg. Co.*, 245 N.Y.2d 305, 310 (1927) (discussing how a party's name on a signature line of a contract would be evidence of an intent to be bound)). The mutual obligations in the LDSA, the services provided by Hyloris, and the payments by AltaThera to Hyloris constitute consideration. "If there is consideration for the entire agreement that is sufficient, the consideration supports the arbitration option." *Sabolsky v. Edwards S. Gordon Co.*, 73 N.Y.2d 133, 137 (1989) (citations omitted).

Accordingly, the arbitration requirement in the LDSA is a valid contract that should be enforced.

2.      Counts 1, 2, 4-6, and 9-11 Are Covered By The Arbitration Agreement

All Counts against Hyloris rest upon the same alleged facts – namely that AltaThera's Brandon Kashfian and possibly one or more other AltaThera representatives disclosed confidential information to Somberg and/or Academic and Somberg and/or Academic disclosed

that information to Hyloris. That question, whether Kashfian had any confidential knowledge worthy of transmission and rising to the level of a trade secret, and whether that information was imparted to Hyloris is the gist of the dispute. All of that is part of Hyloris's alleged breach of the LDSA (Count 4), by which Hyloris allegedly "disclos[ed] and us[ed] AltaThera's confidential information in ways barred by the agreements." *See ECF 1, ¶ 194.* The alleged disclosure of AltaThera's confidential information is what gives rise to AltaThera's trade secret claims, both under the Defend Trade Secrets Act (Count 1) and under the Illinois Trade Secrets Act (Count 2). *See ECF 1, ¶¶ 154-157, 173-176.* The alleged disclosure of AltaThera's confidential information is what gives rise to AltaThera's civil conspiracy claim (Count 9). *See ECF 1, ¶ 229.* Counts 1, 2, 4, and 9 all rest upon the alleged breach of the LDSA.

The alleged disclosure of AltaThera's confidential information is also what gives rise to AltaThera's tortious interference with contract claim (Count 5) and unjust enrichment claim (Count 6). Count 5 alleges that Hyloris was aware of agreements between AltaThera and Academic and Somberg and that Hyloris induced Academic and Somberg "to disclose and use AltaThera's confidential information" in violation of those agreements. *See ECF 1, ¶¶ 200-204.* Count 6 specifically references the agreements' requirement that AltaThera is the sole owner of all rights to results and proceeds of Academic's services under the Agreements and that Hyloris induced Academic and Somberg to breach their obligations under those agreements. *See ECF 1, ¶¶ 209-215.* Thus, Counts 5 and 6 also rest upon the alleged breach of the LDSA.

Count 10 (correction of inventorship for the ʼ213 Patent) alleges that the ʼ213 Patent "is the product of a collaboration between Mr. Kashfian and Dr. Somberg." *See ECF 1, ¶ 236.* Count 11, for ownership of the ʼ796 Application, specifically references Hyloris's "actual notice of AltaThera's ownership of the intellectual property." *See ECF 1, ¶ 244.*

In addition, ███████████████████████████████████████████████ ████████████████████████████████████████, AltaThera conceded that the disputes in the Complaint and the issues subject to arbitration under the LDSA arbitration provisions are identical. *See Ex. 1-B.*

Moreover, allegations to support each of Counts 1, 2, 4-6, and 9-11 against Hyloris rely upon the LDSA. *See ECF 1, ¶¶ 141, 161, 192, 200, 209, 228, 234, 241* (re-alleging and incorporating by reference, *inter alia*, paragraphs 43 and 137 of the Complaint).

Because each of Counts 1, 2, 4-6, and 9-11 against Hyloris is covered by the LDSA, which requires arbitration, Counts 1, 2, 4-6, and 9-11 against Hyloris should be dismissed.

## C.    Any Question of Arbitrability Is Subject to Arbitration

Before deciding whether the LDSA's arbitration agreement applies to AltaThera's asserted claims, the Court "must first address whether the parties have agreed to delegate questions of arbitrability to the arbitrator in the first instance. Presumptively, the court, not the arbitrator, decides 'certain gateway matters, such as whether the parties have a valid arbitration agreement at all or whether a concededly binding arbitration clause applies to a certain type of controversy.'" *Telephone Investments USA, Inc. v. Lumen Techs., Inc.*, 2022 WL 2828751, at *4 (N.D. Ill. July 20, 2022) (citing *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 569 n.2 (2013)). However, "the consensus view among district courts in this circuit and among the other appellate circuit courts holds that reference to or incorporation of AAA rules constitutes clear and unmistakable evidence to delegate arbitrability to an arbitrator." *Tel. Invs. USA*, at *4 (citing, *inter alia, Sha-Poppin Gourmet Popcorn LLC v. JPMorgan Chase Bank, N.A.*, 533 F. Supp. 3d 452, 458 (N.D. Ill. 2021)).

The LDSA's language, coupled with its reference to the AAA rules, delegates any question of the validity, enforcement, interpretation, or scope to an arbitrator. *See Tel. Invs. USA*, at *14; *see also Allscripts Healthcare, LLC v. Etransmedia Tech., Inc.*, 188 F. Supp. 3d 696, 701 (N.D. Ill. 2016); *see also Ex. 1-A, § 16.2*.

Because the LDSA expressly delegates the arbitrability question to an arbitrator, Counts 1, 2, 4-6, and 9-11 against Hyloris should be dismissed.

### D. Count 11 Fails To State a Claim For Which Relief Can Be Granted

Count 11 seeks a judicial declaration that AltaThera is "the owner of the '796 Application" as well as any patents that issue from that application (*e.g.*, the '213 Patent, the inventorship of which is the subject of Count 10) and any patents and patent applications that claim priority to that application (*e.g.*, the '413 Application). *See ECF 1, ¶ 246*. Count 11 fails to state a claim upon which relief can be granted. *See FED. R. CIV. P. 12(b)(6); see also FED. R. CIV. P. 8(a)(2)*. To survive a motion to dismiss, the complaint must have enough factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007).

Count 11 fails to appreciate that questions regarding patent (and patent application) ownership are distinct from questions regarding inventorship. *See, e.g., Ethicon, Inc. v. United States Surgical Corp.*, 135 F.3d 1456, 1465 (Fed. Cir. 1998). Ownership of patents (and patent applications) initially vests in the named inventor(s) and joint inventorship is governed by 35 U.S.C. § 116. *See Beech Aircraft Corp. v. EDO Corp.*, 990 F.2d 1237, 1248 (Fed. Cir. 1993). "Conception is the touchstone of inventorship," which is "defined as the formation in the mind of the inventor of a definite and permanent idea of the complete and operative invention, as it is hereafter to be applied in practice." *Burroughs Wellcome Co. v. Barr Labs., Inc.*, 40 F.3d 1223,

1227-8 (Fed. Cir. 1986). While an invention is initially owned by its inventor(s), each inventor may assign his rights in the invention to another owner. *See 35 U.S.C. § 261; see also Manual of Patent Examining Procedure § 301*.

Importantly, there is no "private right of action to challenge inventorship of a pending patent application" pursuant to 35 U.S.C. § 116 because only the Director of the United States Patent and Trademark Office can change inventorship for a pending patent application. *See, e.g., HIF Bio, Inc. v. Yung Shin Pharm Indus. Co.*, 600 F.3d 1347, 1353-4 (Fed. Cir. 2010) (citing 35 U.S.C. §§ 116, 135(a)). Once a patent issues, as has the '213 Patent from the '796 Application, 35 U.S.C. § 256 "provides a private right of action to challenge inventorship." *HIF*, 600 F.3d at 1353. But 35 U.S.C. § 256 "creates a cause of action in the district courts only to modify inventorship on *issued* patents." *Eli Lilly & Co. v. Aradigm Corp.*, 376 F.3d 1352, 1356 n.1 (Fed. Cir 2004) (emphasis added).

Thus, Count 11 should be dismissed because there is no private right of action to challenge inventorship – and, by extension, ownership – for the '796 Application, '413 Application, or any other patent *application*. The only actionable related issue, an inventorship inquiry for the issued '213 Patent, is already the subject of Count 10.

13

III.    **CONCLUSION**

For at least these reasons, Hyloris respectfully requests that the Court dismiss Counts 1, 2, 4-6, and 9-11 of this action for improper service, improper venue, and failure to state a claim upon which relief can be granted.


Dated: October 6, 2022

Philip L. Hirschhorn *(pro hac vice)*
Erin M. Dunston *(pro hac vice)*
Keith A. Jones *(pro hac vice)*
PANITCH SCHWARZE BELISARIO & NADEL LLP
Two Commerce Square
2001 Market Street, Suite 2800
Philadelphia, PA 19103-7044
Tel: (215) 965-1330
Fax: (215) 965-1331
phirschhorn@panitchlaw.com
edunston@panitchlaw.com
kjones@panitchlaw.com

Respectfully submitted,

/s/ Dean S. Rauchwerger
Dean S. Rauchwerger
Jonathan K. Barger
BUTLER WEIHMULLER KATZ CRAIG LLP
115 South LaSalle Street, Suite 3200
Chicago, IL 60603
Email: drauchwerger@butler.legal
Email: jbarger@butler.legal
Office: (312) 456.0900
Fax: (312) 456.0909

**Counsel for Defendant, Hyloris Pharmaceuticals SA**

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 6, 2022, I electronically filed the foregoing document with the Clerk of Court using CM/ECF which will send electronic notification of such filings to all counsel of record.

/s/ *Dean S. Rauchwerger*
Dean S. Rauchwerger

**Counsel for Defendant, Hyloris**
**Pharmaceuticals SA**