**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| AltaThera Pharmaceuticals LLC,<br><br>     *Plaintiff,*<br><br> vs.<br><br>Hyloris Pharmaceuticals SA, Academic<br>Pharmaceuticals Inc., John C. Somberg,<br>M.D.,<br><br>     *Defendants.* | Civil Action No. 1:22-cv-04620<br><br><br>**DEMAND FOR JURY TRIAL** |

<u>**DEFENDANTS' JOINT REPLY IN SUPPORT OF THEIR MOTIONS TO DISMISS**</u>

   Defendant Hyloris Pharmaceuticals SA ("Hyloris"), jointly with Defendants Academic

Pharmaceuticals Inc. ("Academic") and John C. Somberg, M.D. ("Somberg," and collectively

with Hyloris and Academic, "Defendants"), by their undersigned counsel, respectfully submit

this reply brief in support of their respective motions to dismiss (Dkt. Nos. 32 and 26).  In their

motions, Defendants requested the following relief: (1) Academic and Somberg seek dismissal of

Counts 1-3 and 6-11[1] in favor of contractually required arbitration; (2) Hyloris seeks dismissal of

Counts 1, 2, 4-6, and 9-11[2] in favor of contractually required arbitration; (3) Defendants seek

dismissal of Count 11 for failure to state a claim upon which relief can be granted; and

(4) Hyloris seeks dismissal of the complaint for insufficient service of process

   In its introduction, Plaintiff states that it "intends to" file an arbitration demand.  Dkt. 36

at 1.  In arbitration is exactly where these disputes should be and dismissal of the complaint is

the proper remedy.  That is especially so where the claims are absurd – based on the alleged

---

[1] Counts 4 and 5 are only asserted against Hyloris.
[2] Counts 3, 7, and 8 are only asserted against Academic and Somberg.

inventorship of a non-medical person regarding claims of patents that are entirely medical.[3]  The

fact is, whether determined in arbitration or in the district court, Brandon Kashfian, an AltaThera

founder and Chief Business Officer, had no input into any "trade secret" or "inventive

contribution" into any patent – the asserted bases of the AltaThera dispute.  If the parties are

required to address these issues before this court, it will become clear that this is solely a play by

AltaThera to forestall another entrant in the market – albeit with a different product for a

different patient group.

I.    THE ENTIRE CASE SHOULD BE REFERRED TO ARBITRATION

    A.  Questions of Arbitrability Must Be Resolved by an Arbitrator

Here, where AltaThera has entered into valid agreements to arbitrate against Defendants,

courts must allow the arbitrators to determine the scope of the arbitration.  Nothing AltaThera

asserts undercuts that agreements to arbitrate are present in the effective agreements cited by

AltaThera in the complaint – eliminating that consideration from this Court.  *See, e.g.*, *Telephone

Investments USA, Inc. v. Lumen Techs., Inc.*, 2022 WL 2828751, at *4 (N.D. Ill. July 20, 2022)

(citing *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 569 n.2 (2013)).  In a neutral

arbitration provision citing to no specific rules, a court may decide such issues.  But here, where

the parties specifically provide for governance of the arbitration under specific rules, that

amounts to delegation to the arbitrator.  *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S.

Ct. 524, 530 (2019)  Not only was this decision explicitly delegated, but also reference to or

incorporation of AAA rules of arbitration "constitutes clear and unmistakable evidence to

delegate arbitrability to an arbitrator."  *Telephone Invs. USA*, 2022 WL 2828751, at *4; *see also*

---

[3] Plaintiff states that "Defendants do not challenge these allegations" in the Complaint.  To the extent required, that will come, and Defendants will dispute virtually all of the allegations.

*Sha-Poppin Gourmet Popcorn LLC v. JPMorgan Chase Bank, N.A.,* 533 F. Supp. 3d 452, 458 (N.D. Ill. 2021); *McClenon v. Postmates Inc*., 473 F. Supp. 3d 803, 808-09 (N.D. Ill. 2020).

While the parties dispute which agreements apply to and among the various claims and defendants, it is clear that *all* of the Counts in some way implicate agreements that are governed by AAA rules.  The basis for this suit is primarily that supposed trade secrets concerning the pharmaceutical Sotalol IV were supplied to Academic through Dr. Somberg and he, in turn, relayed those communications to Hyloris.  Because all of the corporate entities are parties to contracts governing those supposed transfers and receipts of trade secrets/confidential information, they are all within existing arbitration provisions of agreements between both AltaThera and Academic and AltaThera and Hyloris.  For example, AltaThera's breach of contract claims against Academic allege breach of the Consultant Agreements (Dkt. 1, ¶ 183), and its trade secrets claims incorporate all the agreements with Academic, including the Consultant Agreements (Dkt. 1, ¶¶ 152 and 172).  AltaThera admits the Consulting Agreements contain an arbitration clause (Dkt. 36, at 3), and the clause in each explicitly refers to AAA rules. *See* § XI of Dkt. 26 Exs. 1-A, 1-B and 1-C.  Similarly, AltaThera admits the License Agreement with Hyloris contains an arbitration clause (Dkt. 36, at 2), which again incorporates AAA arbitration (Dkt. 31-1, Ex. 1-A at 47).

AltaThera seeks to get around these agreements by having this Court rule whether the exceptions in each clause provide for court resolution of its claims, rather than arbitration.  Dkt. 36, at 9-10.  But that is *exactly* the kind of decision on arbitrability that must be decided by the arbitrator.  The cases cited by AltaThera here do not support it on this issue – neither *Duthie* nor *Huron Consulting* involved a contract that incorporated AAA arbitration.  *See Duthie v. Matria Healthcare, Inc.*, 540 F.3d 533, 539 (7th Cir. 2008) (affirming injunction against party seeking

arbitration of fraud claims where issues were non-arbitrable by a plain-reading of the language of the agreement); *Huron Consulting Grp., Inc. v. Gruner*, 2018 WL 572709, at *8–10 (N.D. Ill. Jan. 24, 2018). However, *Huron Consulting* does discuss the issue of court determination of arbitrability. *Huron Consulting*, 2018 WL 572709, at *8–10. There, the court specifically noted that in cases involving AAA arbitration agreements, the Fifth, Eighth, and Ninth Circuits all agreed that the incorporation of AAA rules constitutes an agreement to have *the arbitrator* decide what is arbitrated. *Id*. The court then contrasted the agreement in that case, which did *not* incorporate AAA rules. This comports with the well-established view in this District that "reference to or incorporation of AAA rules constitutes clear and unmistakable evidence to delegate arbitrability to an arbitrator." *Tel. Invs. USA,* 2022 WL 2828751, at *4 (collecting cases).

Critically, this delegation of the arbitrability question is true *even where there are carveouts* to the arbitration clause. *Id*., at *5-8. Such carveouts do not "limit the arbitrators' ability to decide threshold issues of arbitrability." *Id*., at *8. As the *Tel. Invs. USA* court found, whether exceptions to the arbitration clause are to proceed in the court is an issue for the arbitrator to decide. Until then, *all* of AltaThera's claims against Academic and Hyloris must be delegated to an arbitrator for resolution of where each claim should proceed.

AltaThera "disagrees with these cases," but claims it will file an arbitration demand to delegate the threshold questions for "certain" of its claims. Dkt. 36, at 10-11. However, AltaThera does not explain *which* of its claims this would apply to, or why it disagrees with the abundance of case law. Regardless, *all* of AltaThera's claims should be referred to arbitration at least for the threshold questions.

To clarify for the Court the different agreements, Defendants offer the following table:

| Agreement | Description |
|---|---|
| License Development and Supply Agreement [LDSA] between AltaThera and Hyloris dated December 1, 2014 | Contains express arbitration agreement; invokes the AAA commercial rules and New York choice of law (§§ 16.12; 16.5) [Dkt. No. 31-1 at 49, 51-52 Under Seal] |
| 2019 Confidentiality and Non-Use Agreement between AltaThera and Hyloris | Contains no arbitration agreement; relates to disclosures concerning "commercialization plans"; enforcement via the Northern District of Illinois or state courts of Cook County [Dkt. 38 – Under Seal] |
| Confidentiality and Non-Disclosure Agreement dated October 10, 2011 among Academic, Dr. Somberg, and AltaThera (2011 NDA) | Nothing is said about arbitration or court; appears to be Academic that is doing the disclosing; Ill law applies; "In consideration of API's or Somberg's disclosure of Confidential Information …" [Dkt. 36-4] |
| Confidentiality and Non-Use Agreement between Academic, Dr. Somberg, and AltaThera dated April 28, 2016 | Same as 2011 NDA: "In consideration of API's or Somberg's disclosure of Confidential Information …" [Dkt 36-3 is unsigned by Somberg and Academic] |
| Consultant Agreement (CA) January 8, 2018 AltaThera and Academic | Section XII provides that "Except for the Company's right to obtain court-ordered relief with respect to breaches of Section VI of this Agreement, the Consultant agrees that any dispute among the parties hereto shall be settled exclusively by arbitration in Chicago, Illinois in accordance with the rules then obtaining of the American Arbitration Association …" [Dkt. 26-1 at 10] Section IX "supersedes any prior engagement … agreements" |
| Amended and Restated Consultant Agreement [ARCA] AltaThera and Academic dated June 1, 2018 | Section XII provides the same as CA. [Dkt. 26-1 at 20] |
| Second Amended and Restated Consulting Agreement (2ARCA) AltaThera and Academic dated August 22, 2019 | Section XII provides the same as ARCA. [Dkt. 26-1 at 31] |

## B. Claims Against Academic Must Be Arbitrated

AltaThera appears to concede that arbitration of the claims between it and Academic is not only proper, but necessary. Nowhere in AltaThera's Response does it rebut the suggestion that arbitration between it and Academic should proceed, and in fact, AltaThera seems to

5

concede that arbitration is proper at least to determine threshold questions such as the scope of the relevant arbitration agreements. Dkt. 36, at 10-11. As noted in the table above, the prior 2011 and 2016 NDAs between AltaThera and Academic were superseded by the Consultant Agreements. At most, AltaThera asks this Court to stay this case against Academic, rather than dismiss. *Id.*, at 11-13.

With respect to the argument regarding the *Faulkenberg* case, in *Atlantic Marine* the Supreme Court addressed whether a Rule 12(b)(3) motion was proper where the venue was proper and a transfer was possible from one district court to another. *Atl. Marine Constr. Co. v. United States Dist. Court*, 571 U.S. 49, 53 (2013). That is not the case here where the option of a transfer is unavailable. The governing law is *Faulkenberg* until the Seventh Circuit decides to hear another case on the subject. Under *Faulkenberg*, the proper remedy is dismissal. Plaintiff's citation to the *Lukis* case does not change the impact of *Faulkenberg*. *Lukis v. Whitepages Inc.*, 594 F. Supp. 798, 807 (N.D. Ill. 2021). In *Lukis*, the court expounded on its view of the *dicta* in the *Atlantic Marine* case regarding Rule 12(b)(3), but that view does not change the precedential value of *Faulkenberg.*

AltaThera's only real argument for stay versus dismissal without prejudice is the possibility that the statute of limitations may run on certain claims. But that issue is resolved quite readily. Defendants will agree that Plaintiff had whatever rights it may have based on its date of filing of this action for the claims asserted. Defendants will be entitled, whether in arbitration or in this court, to assert the applicable statues of limitations as defenses.

To the extent the court determines that dismissal is not a proper remedy, it is clear that the Court has the power to stay these proceedings, compel arbitration, and, at a proper time, if

ever, administratively re-open the case with the arbitration rulings in hand.  *See, e.g.*, *Allscripts Healthcare, LLC v. Etransmedia Tech., Inc.*, 188 F. Supp. 3d 696, 703 (N.D. Ill. 2016).

### C.  Claims Against Hyloris Must Be Arbitrated

AltaThera argues that none of its claims against Hyloris belong in arbitration because a 2019 Confidentiality Agreement allegedly overrides the 2014 License Agreement cited in Hyloris's motion.  The latter agreement gives no indication that it supersedes the License, Development and Supply Agreement ("LDSA").  Indeed, AltaThera provided the Notice (Dkt. 31-1 at p. 60-61 [under seal]) claiming that the breaches fell within the scope of that agreement – with its express recitation of arbitration as the sole place for resolution of disputes under the LDSA.  Further, an inspection of the two agreements and the very cases AltaThera relies on show that an arbitrator must review the issue.  Citing to *Rosenblum v Travelbyus.com, Ltd.*, 299 F.3d 657 (7th Cir. 2002), AltaThera claims that where "a later contract does not contain an arbitration clause and irreconcilably conflicts with an earlier contract that contains an arbitration clause, the later contract controls."  Dkt. 38, at 8.

*Rosenblum* does not stand for such a broad statement.  Rather, for the later contract to fully override an earlier contract like AltaThera suggests, *Rosenblum* requires the later contract to be directed to the same subject matter as the first and also to negate the earlier contract, such as through a merger clause.  *Id*., at 664-665.  In *Rosenblum*, one party sold his business to the other, and the parties executed two contracts during this process – an acquisition agreement and an employment agreement.  When Rosenblum sued for breach of the acquisition agreement, the defendant sought to compel arbitration of the matter through a clause found only in the employment agreement.  The Seventh Circuit found that the two contracts addressed separate subject matter, and therefore the arbitration clause in one would not be applied to the other.  The

*Ruiz* and *Applied Energetics* cases cited by AltaThera stand for the same proposition, while *LaSalle* is inapplicable because the later contract in that case explicitly superseded the earlier.

This case is similar to *Rosenblum*.  While the 2019 Confidentiality Agreement may not have an arbitration agreement, it does not supersede and overwrite the LDSA, as AltaThera wants it to.  This idea is defeated by AltaThera's own Complaint, where AltaThera pleaded that *both* agreements are valid and that Hyloris breached *both* of them.  Dkt. 1, ¶¶ 193-194. Therefore, a decision needs to be made which of AltaThera's claims arises under each agreement, especially because AltaThera intertwined the agreements throughout the Complaint. As noted above, the reference to AAA arbitration in the LDSA means that the arbitrator, not the Court, should make that determination.

AltaThera also argues that dismissal is not proper here, but that is against the weight of authority.  Under Fed. R. Civ. P. 12(b)(3), the Court may dismiss a claim for improper venue.  *Brown v. Hyatt Place*, Case No. 1:20-cv-05240, 2021 U.S. Dist. LEXIS 75646 *1 (N.D. Ill. Apr. 20, 2021); *see also Auto Mechs. Local 701 Welfare & Pensions Funds v. Vanguard Car Rental USA, Inc*., 502 F.3d 740, 746 (7th Cir. 2007) ("[a]n arbitration clause is simply a type of forum-selection clause . . . and a motion seeking dismissal based on an agreement to arbitrate therefore should be decided under Rule 12(b)(3).").  "Further, according to Rule 12(b)(3), a district court is free to consider documents beyond the pleadings including the parties' arbitration agreements."  *Brown*, 2021 U.S. Dist. LEXIS 75646 at *1-2 (citing *Faulkenberg v. CB Tax Franchise Systems, LP*, 637 F.3d 801, 809-10 (7th Cir. 2011)).  Hyloris and Alta Thera agreed to arbitrate before AAA in New York, and this Court should dismiss and let that arbitration proceed.

## II. CLAIMS AGAINST DR. SOMBERG SHOULD BE DISMISSED

AltaThera's argument against Dr. Somberg is essentially that corporate formalities should be disregarded, and it should be able to pursue claims against him in his individual capacity because he is allegedly a party to the "API Confidentiality Agreements," which do not contain arbitration clauses, and not a party to the Consulting Agreements, which do contain arbitration clauses. But AltaThera's contention that Dr. Somberg was acting in his own capacity and is individually a party to the API Confidentiality Agreements is belied by its own characterization of those agreements. In labeling them the "API Confidentiality Agreements," rather than a name like "API-Somberg Confidentiality Agreements," AltaThera acknowledges that in all respects, it was interacting with Academic and Dr. Somberg was merely representing Academic.

This comports with the language of the API Confidentiality Agreements themselves. Throughout, they are written as if they are between two parties (*i.e.,* Academic and AltaThera), not among three. For example, there are at least three instances where the agreements use a phrase like "with the other party" or "from the other party," rather than "parties." *See, e.g.,* Dkt. 36-3 at 3, ¶ 3 ("Neither party"), at 4, ¶ 8 ("either party"). The agreements also consistently use "Disclosee" rather than "Disclosee(s)." *See, e.g.,* Dkt. 36-3 at 2, ¶ 1, ¶ 2. Still further, paragraph 3 on page 2 refers to "neither party" rather than "none of the parties." *See, e.g.,* Dkt. 36-3 at 3, ¶ 3. The phrasing of the entire agreement shows that it is merely a two-party contract between AltaThera and Academic.

In addition, the 2011 and 2016 NDAs were superseded by the Consultant Agreements. Under Section IX, each of the Consultants Agreement expressly supersedes the prior agreements. And all of those Consultant Agreements were signed by Kashfian for AltaThera and Dr.

9

Somberg for Academic.  It is clear that the Consultant Agreements control and all of the issues in this litigation related to Academic and Somberg are therefore arbitrable.[4]

Finally, AltaThera suggests that Count 7, for fraudulent concealment, is brought against Dr. Somberg in his individual capacity without regard to any agreement.  Dkt. 38, at 6 (citing Dkt. 1, ¶¶ 217-221 [the Complaint]).  But paragraphs 218-220 of the Complaint each explicitly refer to a "contractual relationship with AltaThera."   Further, as noted in Dr. Somberg's opening motion (Dkt. 26, at 13), none of these paragraphs articulate any basis upon which Dr. Somberg engaged into a fiduciary relationship with AltaThera other than the bare assertion that it is so. AltaThera's opposition does not cure this defect.

Because Dr. Somberg acted at all times as a representative of Academic and there is no reason to disregard corporate formalities here, all claims against Dr. Somberg should be dismissed.  Even if these claims are not dismissed, they are so inextricably intertwined with the issues in the eventual arbitration, that those issues should be decided by the arbitrator in the interests of judicial economy.  Indeed, it will be Dr. Somberg who in almost all instances acted for Academic and will be deposed in arbitration.

## III.    COUNT 11 SHOULD BE DISMISSED

AltaThera claims that "Defendants misunderstand" Claim 11 (Dkt. 38, at 14), but it is AltaThera that misunderstands the argument.  Despite AltaThera's claims, the issue is not whether patents and applications can be assigned before the patent issues or whether state law applies.  *Id.*, at 14-15.

---

[4] Dr. Somberg and Academic specifically reserve their rights to challenge all of the allegations in the complaint on statute of limitations and release grounds.  Because the claims are non-specific as to dates (probably purposefully), Academic and Dr. Somberg are not in a position to assert these as part of a Rule 12 motion.

Any claim by AltaThera to patents arising from the Consulting Agreements is limited to patents that are the "results and proceeds" of Academic's work under those Agreements. Dkt. 1, ¶¶ 242-243. But the Court cannot determine whether a patent is a result or proceed of Academic's/Somberg's work under those Agreements, as opposed to Academic's/Somberg's other work independent of those Agreements, until it issues. The metes and bounds of a patent are determined by its claims, and therefore an ownership right to a patent is "defined by patent claims." *BASF Plant Sci., LP v. Commonwealth Sci. & Indus. Research Organisation*, 28 F.4th 1247, 1270 (Fed. Cir. 2022). More specifically, even assuming an AltaThera representative contributed to a patent, whether that contribution is meaningful enough to warrant inventor status cannot be known until the claims issue.

Because the claims of a pending application are malleable and are likely to be amended before the patent issues, the law recognizes a private right of action to challenge invention of issued patents (the claims of which are established), but any challenge to the inventorship of a pending application must be brought before the patent office. To do otherwise would not allow the Court to issue a final ruling, as the claims could simply be amended. Thus, since the law does not allow a Court action to determine who the proper inventor of a patent application is, a court likewise cannot declare ownership until the question of the exact scope of the invention is resolved.

## IV.   SERVICE ON HYLORIS WAS IMPROPER

AltaThera effectively concedes its attempt to serve Hyloris was improper. It does not substantively discuss the case Hyloris relied on (*NSM Music, Inc. v. Alvarez*, 2003 WL 685338, at *2 (N.D. Ill. Feb. 25, 2003)), which is directly on point. Instead, AltaThera cites to District Courts outside this Circuit and conclusively claims *NSM Music* is "an outdated outlier." Dkt. 38, at 13-14. But AltaThera cites no change in precedent that would overrule the *NSM Music*

11

caution that "careful adherence to the requirements of international treaties and the Federal Rules of Civil Procedure" is called for when serving process abroad. *NSM Music,* 2003 WL 685338 at *2. Indeed, as Judge Kennelly ruled, FedEx is not a "postal channel," as Belgium agreed to in the rules of the Hague Convention, nor "mail," as specified in the Federal Rules. *Id.* Given that the Belgian government only authorized service under "postal channels," which are *public* agencies, when it agreed to the Hague treaty, AltaThera is not free to unilaterally circumvent this international treaty and choose a *private* means like FedEx to properly serve Hyloris. The Belgian government never authorized such private service.

AltaThera's tacit admission is more pronounced when considering that it has now engaged a *huissier de justice* in Belgium to try to effectuate proper service, which is a method that Belgium did authorize under the Hague treaty. Dkt. 38, at 14. Given that, Hyloris's motion should now be granted without prejudice to revisiting the issue if and when AltaThera completes its second attempt at service.

Dated: November 8, 2022

Respectfully submitted,

Philip L. Hirschhorn *(pro hac vice)*
Erin M. Dunston *(pro hac vice)*
Keith A. Jones *(pro hac vice)*
PANITCH SCHWARZE BELISARIO & NADEL LLP
Two Commerce Square
2001 Market Street, Suite 2800
Philadelphia, PA 19103-7044
Tel: (215) 965-1330
Fax: (215) 965-1331
phirschhorn@panitchlaw.com
edunston@panitchlaw.com
kjones@panitchlaw.com

/s/ Dean S. Rauchwerger
Dean S. Rauchwerger
Jonathan K. Barger
BUTLER WEIHMULLER KATZ CRAIG LLP
115 South LaSalle Street, Suite 3200
Chicago, IL 60603
Email: drauchwerger@butler.legal
Email: jbarger@butler.legal
Office: (312) 456-0900
Fax: (312) 456-0909

**Counsel for Defendants, Hyloris Pharmaceuticals SA, Academic Pharmaceuticals Inc., and John C. Somberg, M.D.**

## CERTIFICATE OF SERVICE

I hereby certify that on November 8, 2022, I electronically filed the foregoing document with the Clerk of Court using CM/ECF which will send electronic notification of such filings to all counsel of record.

*/s/ Dean S. Rauchwerger*

**Counsel for Defendants, Hyloris Pharmaceuticals SA, Academic Pharmaceuticals Inc., and John C. Somberg, M.D.**

**Counsel for Plaintiff**
**AltaThera Pharmaceuticals LLC**
Steven J. Horowitz
Thomas A. Weber
SIDLEY AUSTIN LLP
Once South Dearborn
Chicago, IL 60603
(312) 853-7000

Lauren Cranford Katzeff
Jillian Sheridan Stonecipher
SIDLEY AUSTIN LLP
1501 K. Street N.W.
Washington, DC 20005
(202) 736-8700